**ROBERTS & KEHAGIARAS LLP**
CAMERON W. ROBERTS (State Bar No. 176682)
cwr@tradeandcargo.com
THEODORE H. ADKINSON, ESQ. (State Bar No. 167350)
tha@tradeandcargo.com
One World Trade Center, Suite 2350
Long Beach, CA 90802
Telephone: (310) 642-9800
Facsimile: (310) 868-2923

Attorneys for defendant
TRUMP CARD, INC.

**ROBERTS & KEHAGIARAS LLP**
www.tradeandcargo.com

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| C3 LIGHTING SOLUTIONS, INC., a Nevada corporation<br><br>            Plaintiff,<br><br>     vs.<br><br>TRUMP CARD, INC. a California corporation and DOES 1–30, inclusive<br><br>            Defendants. | **CASE NO.**<br><br>**NOTICE OF REMOVAL**<br><br>[28 U.S.C. §§ 1441(a), 1441(b), and 1446] |

**TO THE CLERK OF THE ABOVE–ENTITLED COURT:**

     PLEASE TAKE NOTICE THAT defendant TRUMP CARD, INC. ("TRUMP") hereby removes to this Court the following state action:

     1.   On June 11, 2014, plaintiff filed a complaint in the Superior Court of the State of California, Orange County, entitled C3 LIGHTING SOLUTIONS, INC., a Nevada corporation vs.

TRUMP CARD, INC., a California corporation and DOES 1-30, case No. 30-2014-00727689-CU-BT-CJC.   A copy of Plaintiff's complaint is attached hereto as Exhibit "A."

2.   On or about June 18, 2014, Plaintiff served TRUMP by delivering to its registered agent copies of the summons and complaint for the aforementioned state action. A Copy of the summons is attached hereto as Exhibit "B."   This Notice of Removal is timely filed with this Court within thirty (30) days after service of plaintiff's summons and complaint on the defendant.

3.   Removal of this action is proper because this action is a civil action over which this Court has original jurisdiction under Pursuant to 28 U.S.C. §§ 1441(a) and 1446. Removal of this action is proper under 28 U.S.C. § 1441(a) because this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1337 (federal commerce question jurisdiction) in that plaintiffs' complaint constitutes a civil action brought under 49 U.S.C. § 14706 (the "Carmack Amendment") inasmuch as plaintiff's complaint alleges that:

(a)   TRUMP contracted to carry a shipment of goods from Santa Ana, California to Lincoln, Nebraska;

(b)   Actual loss or injury to the property in question;

(c)   TRUMP and/or other defendants allegedly caused the loss or injury; and

(d)   The alleged actual loss or injury to the property in question is in excess of Ten Thousand Dollars ($10,000.00).

ROBERTS & KEHAGIARAS LLP
www.tradeandcargo.com

NOTICE OF REMOVAL

4.    The Carmack Amendment completely preempts plaintiff's common law claims. "It is well settled that the Carmack Amendment is the exclusive cause of action for interstate-shipping contract claims alleging loss or damage to property."[1] This preemption also applies to claims arising from alleged breaches of state insurance laws.[2]

5.    TRUMP is filing a copy of this Notice with the Superior Court of the State of California, Orange County, as required by 28 U.S.C. § 1446(d).  A copy of the Notice of Removal to Federal Court to be filed in the state court action is attached hereto as Exhibit "C".

Dated: July 16, 2014            **ROBERTS & KEHAGIARAS LLP**

By:  _/S/ Theodore H. Adkinson_____
Theodore H. Adkinson
Attorneys for defendant
TRUMP CARD, INC.

**ROBERTS & KEHAGIARAS LLP**
www.tradeandcargo.com

---

[1]  Hall v. North Am. Van Lines, Inc., 476 F.3d 683, 688 (9th Cir. 2007) (citing Georgia, F. & A. R. Co. v. Blish Milling Co., 241 U.S. 190, 195 (1916), Adams Express Co. v. Croninger, 226 U.S. 491, 505-06 (1913), and Hoskins v. Bekins Van Lines, 343 F.3d 769, 778 (5th Cir. 2003)).
[2]  See Nichols v Mayflower Transit, 368 F.Supp.2d 1104 (Nev. 2003); and Houshang Shabani v. Classic Design Serv., 699 F.Supp.2d 1138 (C.D. Cal. 2010).

3

**EXHIBIT "A"**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

|  |  |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>TRUMP CARD, INC., a California corporation and DOES 1-30, inclusive<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br>C3 LIGHTING SOLUTIONS, INC., a Nevada corporation | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**06/11/2014** at 01:41:38 PM<br>Clerk of the Superior Court<br>By Valerie Kintz, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es:)* CENTRAL JUSTICE CENTER<br>700 Civic Center Drive West<br>Santa Ana, California 92701 | CASE NUMBER:<br>*(Número):* 30-2014-00727687-CU-BT-CJC<br><br>Judge Frederick P. Horn |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es:)*
Michael R. Adele, Technology Litigation Center, 828 S. Marjan St., Anaheim, California 92806; 714-342-6987

ALAN CARLSON, Clerk of the Court

| | | | |
|---|---|---|---|
| DATE: 06/11/2014<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | ⟨signature⟩ | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

Valerie Kintz

| | |
|---|---|
| [SEAL]<br>SUPERIOR COURT OF CALIFORNIA COUNTY OF ORANGE | **NOTICE TO THE PERSON SERVED:** You are served<br>1. ☐ as an individual defendant.<br>2. ☐ as the person sued under the fictitious name of *(specify):*<br><br>3. ☒ on behalf of *(specify):* Trump Card, Inc., A California corporation<br>   under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)<br>       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)<br>       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)<br>       ☐ other *(specify):*<br>4. ☒ by personal delivery on *(date):* |

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 41220, 465<br>www.courtinfo.ca.gov |

**EXHIBIT "B"**

1    Michael R. Adele, State Bar No. 138339
     **TECHNOLOGY LITIGATION CENTER**
2    828 S. Marjan St.
     Anaheim, California 92806
3    Telephone:   (714) 342-6987
     E-mail:  techlitcenter@yahoo.com
4
     Attorneys for Plaintiff C3 Lighting Solutions,
5    Inc.

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**06/11/2014** at 01:41:38 PM
Clerk of the Superior Court
By Valerie Kintz, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### IN AND FOR THE COUNTY OF ORANGE

| | |
|---|---|
| C3 LIGHTING SOLUTIONS, INC., a Nevada corporation, | Case No.:  30-2014-00727687-CU-BT-CJC |
| | Judge Frederick P. Horn |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. BREACH OF CONTRACT, INCLUDING WITHOUT LIMITATION CONTRACTUAL BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| TRUMP CARD, INC., a California corporation and DOES 1-30, inclusive | **2. TORTIOUS BREACH OF AN INSURANCE CONTRACT;** |
| Defendants, | **3. UNFAIR BUSINESS PRACTICES;** |
| | **4. NEGLIGENCE;** |
| | **DEMAND FOR JURY TRIAL** |

COMPLAINT

0

Plaintiff C3 LIGHTING SOLUTIONS, INC. ("C3 Lighting" or "Plaintiff"), a Nevada corporation, for its Complaint ("Complaint"), hereby allege as follows:

**THE PARTIES**

1.     Plaintiff is a Nevada corporation, with its principal place of business in Santa Ana, California.

2.     Plaintiff is informed and believes, and based thereon alleges, that Defendant Trump Card, Inc., is a California corporation, with its principal place of business located in Aliso Viejo, California.

3.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1-30, inclusive, and therefore sues these DOE Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believe and based thereon alleges that each of the fictitiously named DOE Defendant is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their (and the other Defendants') conduct.

4.     Plaintiff is informed and believes and based thereon alleges that at all times mentioned herein, certain defendants (including DOES 1-30), were acting as servants, agents, and/or employees of at least one other defendant, were acting in the course and scope of such agency, joint venture, partnership, and employment -- as well as in furtherance of the conspiracy herein described -- with the knowledge, permission, and/or consent (and/or ratification and approval) of each of their principals, employers and/or co-conspirators.

**JURISDICTION AND VENUE**

5.     Plaintiff is informed and believes and based thereon alleges that this action arose in Orange County, California, through a contract that was made, entered into and/or to be performed (at least in part) in Orange County California.

COMPLAINT

## BACKGROUND ALLEGATIONS

6.     On or about October 3, 2013, Plaintiff contracted with Trump Card for Trump Card to ship Plaintiff's products from Plaintiff's headquarters in Santa Ana, California, to Plaintiff's client in Lincoln, Nebraska (hereafter, the "Damaged Shipment"). The products had a declared value of $144,000.

7.     Plaintiff is informed and believes and based thereon allege that it filled out and/or paid for the INSURANCE OPTION for said shipment, to assure that Plaintiff received $144,000 worth of insurance for the products being shipped.

8.     The Damaged Shipment was the second shipment of this exact product that Plaintiff shipped with Trump Card to the same client in Nebraska.  The first shipment included two trucks full of Plaintiff's outdoor menu boards, and was handled by Josh Mell from Trump Card with no problems.  When C3 contracted for the second shipment (which was ultimately damaged in shipping), Plaintiff specifically requested that Josh Mell also handle the loading and securing of this load.  Plaintiff did this because Mr. Mell had done a very good job on the first shipment.   Mr. Mell handled the loading using Plaintiff's forklift driver to place the products on the truck and two of Plaintiff's staff to help Mr. Mell push the products into position.   Mr. Mell brought his own rope and did absolutely all of the securing of the load by himself.   Plaintiff's staff members asked Mr. Mell if he had knotted his rope at each of the structural eye bolts on the top of the menu boards and to the truck side as he had done with the previous order. He assured them both that he had. After Mr. Mell finished securing the load he came down from the truck, asked the driver of the truck to check the load and the driver accepted the load. The driver then closed the truck doors and Mr. Farrell personally provided the driver with the paperwork he required. The sales person for this order, Mr. Farrell and C3 Lighting's office manager all witnessed every aspect of the above process.  In short, C3 contracted with Trump Card based on a representative from Trump Card accepting responsibility for the loading and securing of the load.

9.     Plaintiff was informed that the load was damaged immediately upon its

COMPLAINT

arrival in Nebraska, and it soon thereafter received photos of the damaged products still on the truck. Plaintiff was extremely concerned due to the extent of the damage that it observed from the photos. Plaintiff hired a local forensic photographer to take photos of the load including the unloading of the truck. From the photos it was easy to see that the rope going through the structural eye bolts on top of the menu boards had not been tied in place in any manner. In addition it was documented that the rope that was used to secure the load had broken in numerous places.

10.    Plaintiff worked closely with its client in order to help assure that the order would not be canceled for failure to deliver product.  It was able to convince the client to have the order returned to Plaintiff's plant and reviewed for the possibility of being repaired. The client said that it would not cancel the order if Plaintiff agreed to let the client install three of the least damaged menu boards at stores scheduled to open very soon and repair all fifteen of the menu boards, including a full replacement of the LED light engines.  Plaintiff agreed to repair to like-new condition twelve of the menu boards in their factory and do a best-possible field repair; including light engine replacement of the three menu boards they installed to meet store openings. In order to mitigate the damage to Plaintiff's client for not having drive-thru menu boards at three stores when the client first opened, Plaintiff agreed to accept their offer.

11.    There were numerous delays caused by Trump Card's carrier in getting the menu boards back to Plaintiff's plant, but they finally arrived.   Plaintiff determined that the menu boards could be repaired for much less cost than building new menu boards and sent a quote for the repairs to Trump Card's carrier. The quote included Plaintiff's cost for parts and labor plus 5% and the cost to fly two technicians to Nebraska to repair the three installed menu boards. This quote did not include C3's overhead or the cost to ship the repaired menu boards back to Nebraska.

12.    Plaintiff waited as long as possible to receive a payment from Trump Card's carrier, but still continued to receive numerous delays. Plaintiff finally was required by its client to proceed with the repair or the entire outdoor menu board order would be

COMPLAINT

1  canceled, which would have caused us a total financial loss on the order. In order to

2  mitigate any further financial damage Plaintiff repaired and recently shipped the products

3  back to its client in Nebraska.

4      13.   The outrageous bad faith of Trump Card and its carrier (collectively, "Trump

5  Card") is evident from the following efforts of Trump Card to avoid responsibility. Trump

6  Card offered Plaintiff one-half of its repair quote and Plaintiff refused this offer.  Trump

7  Card said that the offer was based on it being Plaintiff's responsibility for the damage

8  because (supposedly) Plaintiff loaded and secured the load.  After Plaintiff showed that

9  Trump Card's representative loaded and secured the load, Plaintiff was told that there

10  was no insurance coverage because Plaintiff supposedly provided the rope to secure the

11  load and that it was of inadequate strength.  After Plaintiff showed that Trump Card

12  supplied the rope, Plaintiff was told that there was no coverage because Trump Card's

13  contract stated that it was the "shippers" liability for an improperly secured load.  After

14  Plaintiff showed that Trump Card's contract does place liability for a loss due to an

15  improperly secured load on Trump Card if Trump Card was hired to secure the load

16  (which it was here), Plaintiff was told that the problem was actually that Plaintiff's pallets

17  were inadequate and that many of them had broken.  After Plaintiff showed Trump Card

18  pictures evidencing that only one pallet had broken, and a photo showing that it broke

19  after two other menu boards fell on top of it, Trump Card said that they had retained an

20  expert who said that in his opinion the problem was actually that the menu boards were a

21  top heavy load that was not properly secured at its top, and also that the rope used to

22  secure the load was of inadequate strength.  This brings the responsibility for the damage

23  back, full circle to Trump Card who supplied the rope and secured the menu boards in

24  place.

25      14.   Plaintiff is informed and believes and based there on alleges that the

26  runaround from Trump Card is meant to discourage Plaintiff and to entice it to accept a

27  low offer of coverage; as such, it is a classic example of bad faith breach of an insurance

28  contract under California law, and is willful, malicious, and otherwise sufficiently

COMPLAINT

4

1 | despicable as to give rise to actual and punitive damages.

2 |       15.   The delays caused by Trump Cards actions have already caused Plaintiff

3 | additional financial harm over their repair estimate in overtime costs, flying the client to

4 | Santa Ana to inspect the repaired product in order for them to accept replacement, and

5 | the interest on the over $85,000 that it has to this point spent to complete repair and

6 | delivery of this damaged order.

7

8 | **FIRST CAUSE OF ACTION**

9 | **(BREACH OF CONTRACT, INCLUDING WITHOUT LIMITATION CONTRACTUAL**

10 | **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)**

11 | **By Plaintiff Against Defendants**

12 |       16.   Plaintiff incorporates each allegation set forth in paragraphs 1 through 15,

13 | above, as set forth in full herein.

14 |       17.   Plaintiff and Trump Card entered into a contract for the shipment of goods

15 | (the "Contract"), a copy of which is attached hereto collectively as Exhibit A.

16 |       18.   The Plaintiff performed, or was willing to perform, its part of said contracts

17 | (except to the extent non-performance was excused or otherwise justified).

18 |       19.   The Contract included the purchase of insurance for up to $144,000 in

19 | damage to the shipped products, to cover the declared value of the goods. When the

20 | products were damaged in shipment, Trump Card refused to pay for damage they caused

21 | through negligently securing the load. Instead, they engaged in a series of bad faith

22 | refusals to pay for the damage caused, disingenuously blaming the damage on a new

23 | issue each time it was shown that Trump Card was responsible for the issue. Ultimately,

24 | Trump Card's bad faith was dramatically shown when its excuses came full circle and it

25 | once again blamed the damage on securing the load and faulty ropes – even though

26 | Trump Card itself secured the load and provided the faulty rope.

27 |       20.   Defendants breached its contract with Plaintiff, including without limitation

28 | by breaching the express terms of the agreement(s) and/or by breaching the implied

1    covenant of good faith and fair dealing contained therein.

2        21.    Plaintiff was damaged as a direct and proximate result of Defendant's

3    breach of this Contract and seeks recovery of said damages in an amount to be

4    determined at trial, but which is currently believed to exceed $110,000.

5        22.    Plaintiff is contractually entitled to recover reasonable attorneys' fees and all

6    other reasonable costs and expenses incurred as a result of Defendant's breach of

7    contract.

8                              **SECOND CAUSE OF ACTION**

9                  **(TORTIOUS BREACH OF AN INSURANCE CONTRACT)**

10                           **By Plaintiff Against Defendants**

11       23.    Plaintiff incorporates each allegation set forth in paragraphs 1 through 15,

12   above, as set forth in full herein.

13       24.    Plaintiff and Trump Card entered into a contract for the shipment of goods

14   (the "Contract"), a copy of which is attached hereto collectively as Exhibit A.  This contract

15   constitutes, or should otherwise be treated, as a contract of insurance for which punitive

16   damages are available for a bad faith breach.

17       25.    Plaintiff performed, or was willing to perform, its part of said contracts

18   (except to the extent non-performance was excused or otherwise justified).

19       26.    The Contract included the purchase of insurance for up to $144,000 in

20   damage to the shipped products.  When the products were damaged in shipment, Trump

21   Card refused to pay for damage they caused through negligently securing the load.

22   Instead, they engaged in a series of bad faith refusals to pay for the damage caused,

23   disingenuously blaming the damage on a new issue each time it was shown that Trump

24   Card was responsible for the issue.  Ultimately, Trump Card's bad faith was dramatically

25   shown when its excuses came full circle and it once again blamed the damage on

26   securing the load and faulty ropes – even though Trump Card itself secured the load and

27   provided the faulty rope.

28       27.    Plaintiff was damaged as a direct and proximate result of Defendant's

COMPLAINT

1  breach of this Contract seeks recovery of said damages in an amount to be determined at

2  trial, but which is currently believed to exceed $110,000.

3      28.   Plaintiff is informed and believe that, in breaching the contract of insurance

4  and failing and refusing to act in good faith to pay to Plaintiff amounts due under the

5  insurance it sold to Plaintiff, Defendant tortiously breached its contract by acting willfully,

6  maliciously, despicably and otherwise with sufficiently tortious intent to give rise to

7  recovery of punitive damages.

8      29.   Plaintiff is contractually entitled to recover reasonable attorneys' fees and all

9  other reasonable costs and expenses incurred as a result of Defendant's breach of

10  contract.

11  **THIRD CAUSE OF ACTION**

12  **(UNFAIR BUSINESS PRACTICES)**

13  **By Plaintiff Against Defendants**

14      30.   Plaintiff incorporates each allegation set forth in paragraphs 1 through 30,

15  inclusive, as set forth in full herein.

16      31.   Plaintiff is informed and believes and based thereon alleges that Trump

17  Card is engaged in unfair competition, by engaging in unlawful, unfair or fraudulent

18  business acts or practices and/or unfair, deceptive, untrue or misleading advertising, as

19  prohibited *inter alia* by California Bus. & Professions Code Sec. 17200 et seq. and 17500

20  et seq., and under California Civ. Code section 1770(a) (14) ("Representing that a

21  transaction confers or involves rights, remedies, or obligations which it does not have or

22  involve").

23      32.   Plaintiff is informed and believe and based thereon alleges that Trump Card

24  is not licensed to sell insurance in California.

25      33.   Plaintiff is informed and believes and based there on alleges that, through

26  their conduct, Defendants give the consuming public the impression that they are offering

27  insurance for shipments of products entrusted to their care, when in fact:  (a) they are not

28  offering insurance; and/or (b) they have no intention of honoring the insurance they

1 "provide," but rather engage in a series of bad faith tactics to deny "coverage" and

2 otherwise discourage customer's whose products are covered from receiving full and fair

3 reimbursement for the damaged products.

4      34.    For instance, Trump Card advertises the Terms and Conditions of its

5 carriage on the internet at http://www.trumpcardinc.com/terms-conditions.pdf.   On this

6 website, Trump Card offers insurance to customers who pay an "excess valuation

7 charge," which allows the customer to insure the products shipped if their valuation

8 exceeds $50 or $.50 per pound.  See http://www.trumpcardinc.com/terms-conditions.pdf ,

9 para. 8.  As advertised on Trump Card's website, "[i]nsurance coverage is based on

10 [Trump Card's] open insurance policy in effect on the date of shipment," references an

11 "INSURANCE OPTION," and further references "insuring conditions."

12      35.    Plaintiff is informed and believes and based there on alleges that it

13 complied with these terms (except those that may have been waived for which

14 performance may have been excused), that it paid extra for coverage under this option

15 (which payment Defendant accepted), yet it never received the benefits of this promised

16 insurance.

17      36.    Plaintiff was damaged in fact by this practice after Trump Card improperly

18 secured Plaintiff's load with rope Trump Card supplied, damaged Plaintiff's products in

19 transit and then refused to pay for the damage (claiming that the load [Trump Card

20 secured] was improperly secured, and that the rope [Trump Card provided] was

21 defective).

22      37.    Defendants' misconduct as herein described was willful, malicious,

23 despicable and otherwise sufficiently culpable as to warrant an award of exemplary

24 damages and reasonable attorneys' fees and costs.

25      38.    Defendants' conduct constitutes unfair business practices, and should be

26 enjoined.

27

28

### FOURTH CAUSE OF ACTION

### (NEGLIGENCE)

### By Plaintiff Against All Defendants

39.    Plaintiff incorporates each allegation set forth in paragraphs 1-16, inclusive, as set forth in full herein.

40.    Defendants, and each of them:  (1) owed a duty to Plaintiff to handle, secure and ship Plaintiff's products with industry standard care, having undertaken to load, secure and transport Plaintiff's products; (2) breached the duty they owed to Plaintiff; and (3) proximately caused injury to Plaintiff as a result of the breach.

41.    Defendants acted negligently in securing and shipping Plaintiff's products, resulting in damage thereto in transit.

42.    Plaintiff was damaged as a direct and proximate result of Defendant's breach of these contracts and seek recovery of said damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment on its Complaint, as follows:

1.  For actual, consequential and other damages according to proof;

2.  For punitive damages in an amount appropriate to punish Defendant(s) for their wrongful conduct and set an example for others;

3.  For injunctive relief preventing Defendants from engaging in such misconduct in the future;

4.  For attorneys' fees;

5.  For costs of suit herein incurred; and

6.  For such other relief as the Court deems just and proper.

DATED:  June 10, 2014                        TECHNOLOGY LITIGATION CENTER

By:  _____
MICHAEL R. ADELE

Attorneys for C3 Lighting Solutions, Inc.

COMPLAINT

9

## DEMAND FOR JURY TRIAL

Plaintiff C3 Lighting Solutions, Inc. hereby demands a trial by jury on all matters so triable.

DATED: June 10, 2014                TECHNOLOGY LITIGATION CENTER

By: _____
            MICHAEL R. ADELE

Attorneys for C3 Lighting Solutions, Inc.

COMPLAINT

10

# Exhibit A

Print Report·                                                                Page 1 of 1

**TrumpCard Inc.**

www.trumpcardinc.com

**SHIP DATE:** 10/03/2013

**AIRBILL NUMBER:** 758942

| SHIPPER: | CONSIGNEE: |
|---|---|
| C3 LIGHTING SOLUTIONS<br>2907 SOUTH CRODDY WAY<br><br>SANTA ANA CA 92704<br>PATRICK 714-545-5985 | CBS SIGNS<br>4931 NORTH 57TH ST.<br><br>LINCOLN NE 68507   PO Quote #30379<br>WALLY 402-466-7446   SO# 103857 |

| 3RD PARTY: | PREPAID | COLLECT | 3RD PARTY | C.O.D. |
|---|---|---|---|---|
| | YES | | | |
| | NOTE: UNLESS OTHERWISE INDICATED, CHARGES ARE ASSUMED TO BE PREPAID | | | |

| PIECES | PALLETS | DIMENSIONS | WEIGHT |
|---|---|---|---|
| 15 | 15 | 108 X 24 X 91 | 9000 |
| Description: MENU BOARDS | | | |
| 3 | 54 | 66 X 48 X 65 | 1350 |
| Description: PALLET | | | |
| 1 | 17 | 60 X 48 X 50 | 450 |
| Description: PALLET | | | |
| 1 | 12 | 48 X 48 X 45 | 450 |
| Description: PALLET | | | |
| | WEIGHTS ARE SUBJECT TO CORRECTION | | |

THE DECLARED VALUE FOR CARRIAGE OF THIS SHIPMENT IS AGREED AND UNDERSTOOD TO BE $50.00 OR $.50 PER POUND, WHICHEVER IS GREATER, UNLESS A HIGHER VALUE DECLARED BELOW AND APPLICABLE CHARGES PAID THEREON.

**DECLARED VALUE**

**$144000.00**

(SUBJECT TO THE TERMS AND CONDITIONS, THE LOSS IS AS STATED ABOVE)

| ORIGIN | DESTIN |
|---|---|
| CHGWT | RATE |
| MAWB | |

AIRFREIGHT

PICKUP

DELIVERY

D.V.C

OTHER

TOTAL CHARGES

PAYABLE TO TRUMPCARD
GOVERMENT REGULATIONS REQUIRE FREIGHT BILLS TO BE PAID IN (7) SEVEN DAYS.

**AIRFREIGHT SERVICES REQUESTED:**

| NEXT FLIGHT OUT | SECOND DAY |
|---|---|
| NEXT DAY BY NOON | DEFERRED |
| NEXT DAY BY 5PM | X  OTHER |
| SECOND DAY A.M. | |

**VALUE ADDED SERVICES REQUESTED:**

Exclusive Use Vehicle (E.U.V.)
Blanket Wrap

**RECEIVED IN GOOD ORDER BY CONSIGNEE**

Date:
Time:
Pieces:
Signature:

**SPECIAL INSTRUCTIONS:**

READY: 12:00PM          CLOSE: 12:00PM

QUOTE 100113-26, NEED STRAPS TO TIE DOWN AND BLANKETS, JOSH TO ASSITH WITH LOADING TRUCK

DOMESTIC AIRBILL NON-NEGOTIABLE

Received By:
Print: Robbie Lorsen

Sign:

Pallets:      5
Pieces:      15  signs
Bars         4



# Packing Slip

| Date | S.O. No. |
|------|----------|
| 5/6/2013 | 103857 |

2907 S. Croddy Way • Santa Ana, CA 92704
Tel: 714.545.5985 • Fax: 714.668.0942
www.c3lighting.com

INVOICED IN FULL

**Ship To:**

CBS Signs
4931 North 57th St,
Lincoln, NE 68507
Wally/402.466.7446
(call above # to let know shipping)

| PO # | Ship Date | Ship Via | FOB |
|------|-----------|----------|-----|
| Quote #30379 | 8/28/2013 | LTL | Santa Ana |

| Item | Description | Ordered | Shipped |
|------|-------------|---------|---------|
| C-Runza-AV-101 | Arc Vu Indoor LED backlit menu board - 1 graphic opening - MINI TEXTURE BLACK Powdercoat<br>Build as universal section to house graphic measuring 19.25"H x 24"W each.<br>See Production Specifications of exact dimensions.<br>Box OD (approximate) = 20.25"H x 24.125"W x 5.9375"D<br>Visual Opening = 18.875"H x 24"W per window.<br><br>!!MUST HAVE TWO PIGTAILS TO ALLOW DAISY-CHAINING!!<br><br>EACH SECTION MUST HAVE 3/16" HOLES IN THE BACK IN EACH CORNER FOR MOUNTING.<br><br>MUST HAVE REAR MILK DIFFUSING PLEX (USING MORE OPAQUE FUJI FILM GRAPHICS)<br>Clear outer lift and drop plex's with deep grip area.<br>BOB: REQUIRES MODIFIED REAR MILK PLEX (REDUCED HEIGHT?) TO AID IN INSTALLING THEM.<br>Provide any screws/bolts necessary for connecting sections and end caps.<br>Package rear milk plex, front lift-and-drop clear plex, and Sentra strips separate from menu boards. | 12 | |

Signature



**LIGHTING SOLUTIONS™**

2907 S. Croddy Way • Santa Ana, CA 92704
Tel: 714.545.5985 • Fax: 714.668.0942
www.c3lighting.com

# Packing Slip

| Date | S.O. No. |
|------|----------|
| 5/6/2013 | 103857 |

INVOICED IN FULL

**Ship To:**

CBS Signs
4931 North 57th St.
Lincoln, NE 68507
Wally/402.466.7446
(call above # to let know shipping)

| PO # | Ship Date | Ship Via | FOB |
|------|-----------|----------|-----|
| Quote #30379 | 8/28/2013 | LTL | Santa Ana |

| Item | Description | Ordered | Shipped |
|------|-------------|---------|---------|
| C-Runza-AV-102 | Arc Vu Indoor LED backlit menu board - 2 graphic opening - MINI TEXTURE BLACK Powdercoat<br>Build as universal section to house graphics measuring 19.25"H x 24"W each.<br>See Production Specifications of exact dimensions.<br>Box OD (approximate) = 20.25"H x 48.25"W x 5.9375"D<br>Visual Opening = 18.875"H x 24"W per window.<br><br>EACH SECTION MUST HAVE 3/16" HOLES IN THE BACK IN EACH CORNER AND ONE IN TOP CENTER FOR MOUNTING.<br><br>Provide internal pigtail for power input.<br>Provide Several Screw Holes toward bottom of back to allow to secure to wall.<br>MUST HAVE REAR MILK DIFFUSING PLEX (USING MORE OPAQUE FUJI FILM GRAPHICS)<br>Clear outer lift and drop plex's with deep grip area.<br>BOB: REQUIRES MODIFIED REAR MILK PLEX (REDUCED HEIGHT?) TO AID IN INSTALLING THEM.<br>Provide screws/bolts for connecting sections and end caps.<br>Package rear milk plex, front lift-and-drop clear plex, and Sentra strips separate from menu boards. | 54 | |
| C-Runza-AV-Endcap | One set of ends caps (left and right) for Runza Arc Vu indoor menu board. | 24 | |
| 0600-24-6-0-100000 | 600W, Six Class 2 outputs, no dimming, 120V | 15 | |

Signature



# Packing Slip

| Date | S.O. No. |
|------|----------|
| 5/6/2013 | 103857 |

2907 S. Croddy Way • Santa Ana, CA 92704
Tel: 714.545.5985 • Fax: 714.668.0942
www.c3lighting.com

INVOICED IN FULL

**Ship To:**

CBS Signs
4931 North 57th St.
Lincoln, NE 68507
Wally/402.466.7446
(call above # to let know shipping)

| PO # | Ship Date | Ship Via | FOB |
|------|-----------|----------|-----|
| Quote #30379 | 8/28/2013 | LTL | Santa Ana |

| Item | Description | Ordered | Shipped |
|------|-------------|---------|---------|
| C-Runza-DT-01 | Combined price of four(4) 2 graphic opening Arc Vu's. one set of end caps, and one 600 watt power supply equal the volume purchase agreement price of $2,705.<br><br>Custom Outdoor Drive-Thru MAIN Menu Board - Runza National<br><br>STANDARD (NO SET UP FOR COMMUNICATIONS)<br><br>Approximate dimension: 85.75"H x 108"W x 6"D<br>SEE CURRENT PRODUCTION SPECIFICATIONS<br><br>GLOSSY BLACK Powder Coat<br><br>Needs REAR MILK PLEX as customer uses Fuji Film Graphics which are more translucent than Duratrans.<br><br>ADD SHUT-OFF SWITCH TO PEDESTAL.<br><br>LIFT AND DROP TABS MUST HAVE DEEPER LIP SO THEY CAN BE MORE EASILY GRIPPED.<br><br>NO WEATHER STRIPPING.<br><br>NO SET UP FOR SPEAKER AND MICROPHONE. | 9 | |

Signature _____



**LIGHTING SOLUTIONS™**
*Conceive · Connect · Control*

2907 S. Croddy Way · Santa Ana, CA 92704
Tel: 714.545.5985 · Fax: 714.668.0942
www.c3lighting.com

# Packing Slip

| Date | S.O. No. |
|---|---|
| 5/6/2013 | 103857 |

INVOICED IN FULL

Ship To:

CBS Signs
4931 North 57th St.
Lincoln, NE  68507
Wally/402.466.7446
(call above # to let know shipping)

| PO # | Ship Date | Ship Via | FOB |
|---|---|---|---|
| Quote #30379 | 8/28/2013 | LTL | Santa Ana |

| Item | Description | Ordered | Shipped |
|---|---|---|---|
| C-Runza-DT-02 | Custom Outdoor Drive-Thru MAIN Menu Board  - Runza National<br><br>INCLUDES COMMUNICATIONS COMPONENTS (SPEAKER/MICROPHONE)-RUNZA TO PROVIDE<br><br>Approximate dimension: 85.75"H x 108"W x 6"D<br>SEE REVISED PRODUCTION SPECIFICATIONS<br><br>GLOSSY BLACK Powder Coat<br><br>Needs REAR MILK PLEX as customer uses Fuji Film Graphics which are more translucent than Duratrans.<br><br>ADD SHUT-OFF SWITCH TO PEDESTAL.<br><br>LIFT AND DROP TABS MUST HAVE DEEPER LIP SO THEY CAN BE MORE EASILY GRIPPED.<br><br>NO WEATHER STRIPPING.<br><br>INSTALL MICROPHONE IN LEFT HAND VERTICAL SUPPORT AT 40" HEIGHT.  AFFORD ABILITY TO MOUNT AND WIRE SPEAKER BEHIND RIGHT HAND LOWER SUPPORT WING. SPEAKER BOX TO BE MOUNTED BY OTHERS.  PROVIDE PULL STRING TO ROUTE WIRE. | 6 | |

Signature



**LIGHTING SOLUTIONS™**
Concept • Connect • Confirm

2907 S. Croddy Way • Santa Ana, CA 92704
Tel: 714.545.5985 • Fax: 714.668.0942
www.c3lighting.com

*INVOICED IN FULL*

# Packing Slip

| Date | S.O. No. |
|------|----------|
| 5/6/2013 | 103857 |

Ship To:

CBS Signs
4931 North 57th St.
Lincoln, NE 68507
Wally/402.466.7446
(call above # to let know shipping)

| PO # | Ship Date | Ship Via | FOB |
|------|-----------|----------|-----|
| Quote #30379 | 8/28/2013 | LTL | Santa Ana |

| Item | Description | Ordered | Shipped |
|------|-------------|---------|---------|
| C-Runza-AV-02 | Separate trim for Arc Vu menu board - MINI TEXTURE BLACK Powdercoat<br><br>Check specs for proper size. Architectural tubing with square edges(NOT CURVED EDGES), capped on ends. Horizontal pieces in two sections(?).  NOT TO BE MITERED CORNERS! See drawing on left hand side of sales folder.<br>To extend the exact width of the menu board, one top, one bottom, pending production documents (193.621" total combined length?). Build in 2 sections per length(top and bottom) for a total of 4 sections(?). (Built in sections for ease of shipping/freight cost). Two lengths to extend the height of the menu board, plus 6" to match height of menu board plus horizontal trim, pending production documents (26.25"?).<br>Once installed, they should form a perfect square around the perimeter of the menu board with trim flush to the back edge of the menu board.<br>Pre-drill menu board and thread trim sections to mate.<br>Package separately from menu boards(with screws (provide extras)). | 2 | |
| Pallet | Pallet charge. (19 total pallets) | 1 | |
| S&H-Customer | Shipping & Handling to customer-LTL Carrier - 1 full semi trailer<br>Out-of-state sale, exempt from sales tax | | |

Signature



**LIGHTING SOLUTIONS**
Conceive · Connect · Connect

2907 S. Croddy Way • Santa Ana, CA 92704
Tel· 714.545.5985 • Fax: 714.868.0942
www.c3lighting.com

# Invoice No.:   113857

| Date |
|------|
| 10/2/2013 |

| Bill To |
|---------|
| Runza National, Inc.<br>Donald Everett<br>5931 South 58th Street, Ste. C<br>Lincoln, NE  68516 |

| Ship To |
|---------|
| CBS Signs<br>4931 North 57th St.<br>Lincoln, NE  68507<br>Wally/402.466.7446<br>(call above # to let know shipping) |

| S.O. No. | P.O. No. | Ship Date | Ship Via | Terms | Rep |
|----------|----------|-----------|----------|-------|-----|
| 103857 | Quote #30379 | 10/2/2013 | LTL. | 33%/17% - 50% Net 30 | MM |

| Cat. No. | Description | Quantity | Unit Price | Total |
|----------|-------------|----------|------------|-------|
| C-Runza-AV-101 | Arc Vu Indoor LED backlit menu board - 1 graphic opening - MINI TEXTURE BLACK Powdercoat<br>Build as universal section to house graphic measuring 19.25"H x 24"W each.<br>See Production Specifications of exact dimensions.<br>Box OD (approximate) = 20.25"H x 24.125"W x 5.9375"D<br>Visual Opening = 18.875"H x 24"W per window.<br><br>!!MUST HAVE TWO PIGTAILS TO ALLOW DAISY-CHAINING!!<br><br>EACH SECTION MUST HAVE 3/16" HOLES IN THE BACK IN EACH CORNER FOR MOUNTING.<br><br>MUST HAVE REAR MILK DIFFUSING PLEX (USING MORE OPAQUE FUJI FILM GRAPHICS)<br>Clear outer lift and drop plex's with deep grip area.<br>BOB: REQUIRES MODIFIED REAR MILK PLEX (REDUCED HEIGHT?) TO AID IN INSTALLING THEM.<br>Provide any screws/bolts necessary for | 12 | 253.75 | 3,045.00T |

| | |
|---|---|
| Subtotal | |
| Sales Tax (0.0%) | |
| Deposit | |
| Balance Due | |

Page 1



**LIGHTING SOLUTIONS**

2907 S. Croddy Way • Santa Ana, CA 92704
Tel: 714.545.5985 • Fax: 714.668.0942
www.c3lighting.com

# Invoice No.:   113857

| Date |
|------|
| 10/2/2013 |

| Bill To |
|---------|
| Runza National, Inc. |
| Donald Everett |
| 5931 South 58th Street, Ste. C |
| Lincoln, NE  68516 |

| Ship To |
|---------|
| CBS Signs |
| 4931 North 57th St. |
| Lincoln, NE  68507 |
| Wally/402.466.7446 |
| (call above # to let know shipping) |

| S.O. No. | P.O. No. | Ship Date | Ship Via | Terms | Rep |
|----------|----------|-----------|----------|-------|-----|
| 103857 | Quote #30379 | 10/2/2013 | LTL | 33%/17% - 50% Net 30 | MM |

| Cat. No. | Description | Quantity | Unit Price | Total |
|----------|-------------|----------|------------|-------|
| | connecting sections and end caps. Package rear milk plex, front lift-and-drop clear plex, and Sentra strips separate from menu boards. | | | |

| | |
|---|---|
| **Subtotal** | |
| **Sales Tax (0.0%)** | |
| **Deposit** | |
| **Balance Due** | |



**LIGHTING SOLUTIONS™**
Conserve · Generate · Control

2907 S. Croddy Way · Santa Ana, CA 92704
Tel: 714.545.5985 · Fax: 714.668.0942
www.c3lighting.com

# Invoice No.:   113857

| Date |
| --- |
| 10/2/2013 |

| Bill To |
| --- |
| Runza National, Inc.<br>Donald Everett<br>5931 South 58th Street, Ste. C<br>Lincoln, NE  68516 |

| Ship To |
| --- |
| CBS Signs<br>4931 North 57th St.<br>Lincoln, NE  68507<br>Wally/402.466.7446<br>(call above # to let know shipping) |

| S.O. No. | P.O. No. | Ship Date | Ship Via | Terms | Rep |
| --- | --- | --- | --- | --- | --- |
| 103857 | Quote #30379 | 10/2/2013 | LTL | 33%/17% - 50% Net 30 | MM |

| Cat. No. | Description | Quantity | Unit Price | Total |
| --- | --- | --- | --- | --- |
| C-Runza-AV-102 | Arc Vu Indoor LED backlit menu board - 2 graphic opening - MINI TEXTURE BLACK Powdercoat<br>Build as universal section to house graphics measuring 19.25"H x 24"W each.<br>See Production Specifications of exact dimensions.<br>Box OD (approximate) = 20.25"H x 48.25"W x 5.9375"D<br>Visual Opening = 18.875"H x 24"W per window.<br><br>EACH SECTION MUST HAVE 3/16" HOLES IN THE BACK IN EACH CORNER AND ONE IN TOP CENTER FOR MOUNTING.<br><br>Provide internal pigtail for power input.<br>Provide Several Screw Holes toward bottom of back to allow to secure to wall.<br>MUST HAVE REAR MILK DIFFUSING PLEX (USING MORE OPAQUE FUJI FILM GRAPHICS)<br>Clear outer lift and drop plex's with deep grip area.<br>BOB: REQUIRES MODIFIED REAR MILK | 54 | 507.50 | 27,405.00T |

| | |
| --- | --- |
| Subtotal | |
| Sales Tax (0.0%) | |
| Deposit | |
| Balance Due | |



**C3 LIGHTING SOLUTIONS**
Conceive · Connect · Control

2907 S. Croddy Way • Santa Ana, CA 92704
Tel: 714.546.5985 • Fax: 714.668.0942
www.c3lighting.com

# Invoice No.:   113857

| Date |
| --- |
| 10/2/2013 |

| Bill To |
| --- |
| Runza National, Inc.<br>Donald Everett<br>5931 South 58th Street, Ste. C<br>Lincoln, NE  68516 |

| Ship To |
| --- |
| CBS Signs<br>4931 North 57th St.<br>Lincoln, NE  68507<br>Wally/402.466.7446<br>(call above # to let know shipping) |

| S.O. No. | P.O. No. | Ship Date | Ship Via | Terms | Rep |
| --- | --- | --- | --- | --- | --- |
| 103857 | Quote #30379 | 10/2/2013 | LTL | 33%/17% - 50% Net 30 | MM |

| Cat. No. | Description | Quantity | Unit Price | Total |
| --- | --- | --- | --- | --- |
| | PLEX (REDUCED HEIGHT?) TO AID IN INSTALLING THEM.<br>Provide screws/bolts for connecting sections and end caps.<br>Package rear milk plex, front lift-and-drop clear plex, and Sentra strips separate from menu boards. | | | |
| C-Runza-AV-Endcap | One set of ends caps (left and right) for Runza Arc Vu indoor menu board. | 24 | 25.00 | 600.00T |
| 0600-24-6-0-100000 | 600W, Six Class 2 outputs, no dimming, 120V<br><br>Combined price of four(4) 2 graphic opening Arc Vu's, one set of end caps, and one 600 watt power supply equal the volume purchase agreement price of $2,705. | 15 | 650.00 | 9,750.00T |

| | |
| --- | --- |
| Subtotal | |
| Sales Tax (0.0%) | |
| Deposit | |
| Balance Due | |


LIGHTING SOLUTIONS™

2907 S. Croddy Way • Santa Ana, CA 92704
Tel: 714.546.5986 • Fax: 714.668.0942
www.c3lighting.com

# Invoice No.:   113857

| Date |
|------|
| 10/2/2013 |

| Bill To |
|---------|
| Runza National, Inc.<br>Donald Everett<br>5931 South 58th Street, Ste. C<br>Lincoln, NE  68516 |

| Ship To |
|---------|
| CBS Signs<br>4931 North 57th St.<br>Lincoln, NE  68507<br>Wally/402.466.7446<br>(call above # to let know shipping) |

| S.O. No. | P.O. No. | Ship Date | Ship Via | Terms | Rep |
|----------|----------|-----------|----------|-------|-----|
| 103857 | Quote #30379 | 10/2/2013 | LTL | 33%/17% - 50% Net 30 | MM |

| Cat. No. | Description | Quantity | Unit Price | Total |
|----------|-------------|----------|------------|-------|
| C-Runza-DT-01 | Custom Outdoor Drive-Thru MAIN Menu Board  - Runza National<br><br>STANDARD (NO SET UP FOR COMMUNICATIONS)<br><br>Approximate dimension: 85.75"H x 108"W x 6"D<br>SEE CURRENT PRODUCTION SPECIFICATIONS<br><br>GLOSSY BLACK Powder Coat<br><br>Needs REAR MILK PLEX as customer uses Fuji Film Graphics which are more translucent than Duratrans.<br><br>ADD SHUT-OFF SWITCH TO PEDESTAL.<br><br>LIFT AND DROP TABS MUST HAVE DEEPER LIP SO THEY CAN BE MORE EASILY GRIPPED.<br><br>NO WEATHER STRIPPING.<br><br>NO SET UP FOR SPEAKER AND MICROPHONE. | 9 | 6,630.00 | 59,670.00T |

| | |
|---|---|
| Subtotal | |
| Sales Tax (0.0%) | |
| Deposit | |
| Balance Due | |



**LIGHTING SOLUTIONS**

2907 S. Croddy Way • Santa Ana, CA 92704
Tel: 714.545.5986 • Fax: 714.668.0942
www.o3lighting.com

# Invoice No.:   113857

| Date |
|---|
| 10/2/2013 |

**Bill To**
Runza National, Inc.
Donald Everett
5931 South 58th Street, Ste. C
Lincoln, NE 68516

**Ship To**
CBS Signs
4931 North 57th St.
Lincoln, NE 68507
Wally/402.466.7446
(call above # to let know shipping)

| S.O. No. | P.O. No. | Ship Date | Ship Via | Terms | Rep |
|---|---|---|---|---|---|
| 103857 | Quote #30379 | 10/2/2013 | LTL | 33%/17% - 50% Net 30 | MM |

| Cat. No. | Description | Quantity | Unit Price | Total |
|---|---|---|---|---|
|  | Custom Outdoor Drive-Thru MAIN Menu Board - Runza National<br><br>INCLUDES COMMUNICATIONS COMPONENTS (SPEAKER/MICROPHONE)-RUNZA TO PROVIDE<br><br>Approximate dimension: 85.75"H x 108"W x 6"D<br>SEE REVISED PRODUCTION SPECIFICATIONS<br><br>GLOSSY BLACK Powder Coat<br><br>Needs REAR MILK PLEX as customer uses Fuji Film Graphics which are more translucent than Duratrans.<br><br>ADD SHUT-OFF SWITCH TO PEDESTAL.<br><br>LIFT AND DROP TABS MUST HAVE DEEPER LIP SO THEY CAN BE MORE EASILY GRIPPED.<br><br>NO WEATHER STRIPPING.<br><br>INSTALL MICROPHONE IN LEFT HAND |  |  |  |

| | |
|---|---|
| **Subtotal** | |
| **Sales Tax (0.0%)** | |
| **Deposit** | |
| **Balance Due** | |



**LIGHTING SOLUTIONS**

2907 S. Croddy Way • Santa Ana, CA 92704
Tel: 714.545.5985 • Fax: 714.668.0942
www.c3lighting.com

# Invoice No.:   113857

| Date |
|------|
| 10/2/2013 |

| Bill To |
|---------|
| Runza National, Inc.<br>Donald Everett<br>5931 South 58th Street, Ste. C<br>Lincoln, NE  68516 |

| Ship To |
|---------|
| CBS Signs<br>4931 North 57th St.<br>Lincoln, NE  68507<br>Wally/402.466.7446<br>(call above # to let know shipping) |

| S.O. No. | P.O. No. | Ship Date | Ship Via | Terms | Rep |
|----------|----------|-----------|----------|-------|-----|
| 103857 | Quote #30379 | 10/2/2013 | LTL | 33%/17% - 50% Net 30 | MM |

| Cat. No. | Description | Quantity | Unit Price | Total |
|----------|-------------|----------|------------|-------|
| | VERTICAL SUPPORT AT 40" HEIGHT. AFFORD ABILITY TO MOUNT AND WIRE SPEAKER BEHIND RIGHT HAND LOWER SUPPORT WING. SPEAKER BOX TO BE MOUNTED BY OTHERS.  PROVIDE PULL STRING TO ROUTE WIRE. | | | |

| | |
|---|---|
| Subtotal | |
| Sales Tax (0.0%) | |
| Deposit | |
| Balance Due | |



**LIGHTING SOLUTIONS™**

2907 S. Croddy Way • Santa Ana, CA 92704
Tel: 714.545.5985 • Fax: 714.668.0942
www.c3lighting.com

# Invoice No.:   113857

| Date |
|------|
| 10/2/2013 |

| Bill To |
|---------|
| Runza National, Inc.<br>Donald Everett<br>5931 South 58th Street, Ste. C<br>Lincoln, NE 68516 |

| Ship To |
|---------|
| CBS Signs<br>4931 North 57th St.<br>Lincoln, NE 68507<br>Wally/402.466.7446<br>(call above # to let know shipping) |

| S.O. No. | P.O. No. | Ship Date | Ship Via | Terms | Rep |
|----------|----------|-----------|----------|-------|-----|
| 103857 | Quote #30379 | 10/2/2013 | LTL | 33%/17% - 50% Net 30 | MM |

| Cat. No. | Description | Quantity | Unit Price | Total |
|----------|-------------|----------|------------|-------|
| C-Runza-AV-02 | Separate trim for Arc Vu menu board - MINI TEXTURE BLACK Powdercoat<br><br>Check specs for proper size. Architectural tubing with square edges(NOT CURVED EDGES), capped on ends. Horizontal pieces in two sections(?). NOT TO BE MITERED CORNERS! See drawing on left hand side of sales folder.<br>To extend the exact width of the menu board, one top, one bottom, pending production documents (193.621" total combined length?). Build in 2 sections per length(top and bottom) for a total of 4 sections(?). (Built in sections for ease of shipping/freight cost).<br>Two lengths to extend the height of the menu board, plus 6" to match height of menu board plus horizontal trim, pending production documents (26.25"?).<br>Once installed, they should form a perfect square around the perimeter of the menu board with trim flush to the back edge of the menu board.<br>Pre-drill menu board and thread trim sections to mate.<br>Package separately from menu boards(with screws (provide extras)). | 2 | 750.00 | 1,500.00T |

| | |
|--|--|
| **Subtotal** | |
| **Sales Tax (0.0%)** | |
| **Deposit** | |
| **Balance Due** | |

 **LIGHTING SOLUTIONS**™
Conceive · Create · · Control

2907 S. Croddy Way • Santa Ana, CA 92704
Tel: 714.545.5985 • Fax: 714.668.0942
www.c3lighting.com

# Invoice No.: 113857

| Date |
| --- |
| 10/2/2013 |

**Bill To**
Runza National, Inc.
Donald Everett
5931 South 58th Street, Ste. C
Lincoln, NE  68516

**Ship To**
CBS Signs
4931 North 57th St.
Lincoln, NE  68507
Wally/402.466.7446
(call above # to let know shipping)

| S.O. No. | P.O. No. | Ship Date | Ship Via | Terms | Rep |
| --- | --- | --- | --- | --- | --- |
| 103857 | Quote #30379 | 10/2/2013 | LTL | 33%/17% - 50% Net 30 | MM |

| Cat. No. | Description | Quantity | Unit Price | Total |
| --- | --- | --- | --- | --- |
| Pallet | Pallet charge. (19 total pallets) | 1 | 1,250.00 | 1,250.00T |
| S&H-Customer | Shipping & Handling to customer-LTL Carrier - 1 full semi trailer | 1 | 6,736.00 | 6,736.00 |

| | |
| --- | --- |
| **Subtotal** | $150,126.00 |
| **Sales Tax (0.0%)** | $0.00 |
| **Deposit** | $-71,070.20 |
| **Balance Due** | $79,055.80 |

Subj:    **Trump Card terms and conditions**
Date:    10/18/2013 2:39:03 P.M. Pacific Daylight Time
From:    josh.mell@trumpcardinc.com
To:      Rclarkfarrell@aol.com

Rick,

Attached are the terms and conditions that we discussed. These are on the back of our airbills and can also be found on our website at www.trumpcardinc.com. Please review and we can discuss further.

Thank you,


**Joshua Mell**
Phone:          (800) 889-0676
Fax:            (800) 898-4442
Email:          josh.mell@trumpcardinc.com
Operations:     operations.oc@trumpcardinc.com
International:   international@trumpcardinc.com
Web:            www.trumpcardinc.com



*Please be advised that our Terms & Conditions apply equally to any shipment discussed or contemplated in this email and/or its attachments. Any and all shipments tendered to Trump Card are governed by these Terms & Conditions. A copy of the Terms & Conditions can be provided to you at any time upon request. Our Terms & Conditions can also be found on our website at www.trumpcardinc.com.*

## CONDITIONS OF CONTRACT

1. In tendering this shipment, the Shipper agrees to these Conditions of Contract of Carriage, which no agent or employee of the parties may alter, and that this air bill is non-negotiable and has been prepared by the Shipper. The Shipper certifies and represents to TRUMP CARD, INC. (herein TCI) that the information inserted on the face of this air bill is complete and accurate. It is agreed among the parties involved that the conditions of contract of carriage for this shipment are governed by TCI's tariffs, available at TCI's offices, and which are hereby incorporated into this contract, and a copy of which will be supplied upon request. NOTE: Shipper in this contract means the party from whom the shipment is received, the party who requested the shipment be transported by TCI, any party having an interest in the shipment, and any party who acts as an agent for any of the above. Except to the extent of any written contract between shipper and Forwarder, this shipping document supersedes and negates any claimed, alleged or asserted oral or written contract, promise, representation or understanding between the parties with respect to this shipment.

2. In the event that shipment is tendered to TCI on a straight bill of lading or any other shipping document, TCI's rules and regulations will supersede any rules and regulations contained on the shipping document on which the freight was tendered.

3. SHIPPER WARRANTS that each package in this shipment is properly described on the air bill, is properly marked and addressed, is packaged adequately to protect the enclosed goods to insure safe transportation with ordinary care in handling, and except as noted is in good order and condition. For articles shipped in unenclosed containers, TCI shall not be liable for damage/loss unless mishandling and/or loss is evident and is so noted on the delivery receipt at time of delivery. NOTE: A shipment in which delivery is made in exchange for a clear delivery receipt shall be prima facie evidence of having received ordinary care in handling.

4. At time of delivery, the CONSIGNEE MUST NOTE on the air bill any exceptions to the shipping containers that would indicate a discrepancy (shortage) in the shipment or damage to the containers). The Consignee may not inspect the contents of the shipping containers until the Consignee signs for the shipment on the delivery receipt. NOTE: Such notations as "subject to inspection" and "subject to recount" are not exceptions. NOTE: A shipment in which delivery is made in exchange for a clear delivery receipt shall be prima facie evidence of having received ordinary care in handling.

5. TCI SHALL NOT BE LIABLE IN ANY EVENT FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS, INCOME, INTEREST UTILITY OR LOSS OF MARKET WHETHER OR NOT TRUMP CARD HAD KNOWLEDGE THAT SUCH DAMAGES MIGHT BE INCURRED.

6. Due to inherent nature of the transportation business, TCI does not guarantee pick up, transportation, or delivery by a stipulated date or a stipulated time, nor shall TCI be liable for consequences of failure to do so.

7. Overcharge claims must be received IN WRITING by TCI within 4 months after date of acceptance of the shipment by TCI. Written notification on all other claims (except concealed loss/damage claims) must be received IN WRITING by TCI within 10 days after TCI accepted the shipment. Notification of concealed loss/damage claims (i.e., claims for loss or damage discovered by the Consignee after delivery and after a clear receipt has been given) must be received IN WRITING by TCI within 3 days after delivery, or if perishables, verbally within 48 hours. For damage claims and concealed loss claims, TCI must be allowed the privilege to make inspection of the shipment and its container(s) and packaging material(s) at place of delivery. Claims must be perfected within 120 days after delivery or date delivery was intended. No claims will be entertained until all transportation charges have been paid. Claims may not be deducted from transportation charges and no claims may be deducted from any charges owed TCI. Legal action in reference a claim must be brought within one year after the claim has been denied in writing by TCI, in whole or in part.

8. TCI's liability, in absence of a higher declared value for carriage, is limited to a minimum of $50.00 per shipment of $0.50 per pound, per piece, of cargo lost, damaged, misdelivered or otherwise adversely affected, but in no event shall exceed the actual invoice value of the goods. This limitation is subject to provisions as published in TCI's governing tariffs in effect at the time of this shipment. Declared values for carriage in excess of $0.50 per pound, per piece, shall be subject to an excess valuation charge.

9. Unless each piece of the shipment has a declared value stated and is specifically identified on TCI's air bill at time of shipment and is so identified on the delivery receipt as being lost, damaged, destroyed, or otherwise adversely affected at time of delivery, TCI shall be liable subject to tariff provisions in effect at the time of the shipment for the "average declared value" of the shipment. The "average declared value" of the shipment shall be determined by first dividing the total declared value of the shipment by the total weight of the shipment. This figure, multiplied by the packaged weight of the piece(s) adversely affected, shall then establish the amount of TCI's liability. The total declared value amount must be inserted in the DECLARED VALUE box on the face of this air bill. TCI's liability shall in no event exceed the actual invoice value of the goods adversely affected.

10. In the event of the failure or inability of the consignee to take delivery of the shipment, TCI will notify Shipper in writing at the address shown on the air bill and request disposition instructions. If the Shipper fails to provide disposition instructions within 30 days after the date of TCI's notice, TCI will return shipment to the Shipper at the Shipper's expense. If the Shipper fails to accept delivery of a shipment thus returned, TCI may, upon 30 days written notice to the Shipper, dispose of the shipment at public or private sale and pay itself out of the proceeds to satisfy the transportation charges owing on the shipment. Any sums collected by TCI in excess of such transportation charges will be paid to the Shipper. No sale or disposal pursuant to this rule will discharge any liability or lien to any greater extent than the proceeds thereof. The Shipper and the Consignee shall remain liable, jointly and severally, for deficiency.

11. TCI shall not be liable for loss, damage, or delay or monetary loss of any type caused by: Acts of God; public authorities acting with actual or apparent authority; strikes; labor disputes; weather; mechanical failures; aircraft failures; civil commotions; acts or omission of customs or quarantine officials; the nature of the shipment or any defects thereof; public enemies; hazards incident to a state of war; acts of terrorism; and by acts, defaults, or omissions of the Shipper or Consignee for failure to observe the terms and conditions of the contract of carriage contained in this air bill including but not limited to improper packaging, marking, incomplete/inaccurate shipping instructions and the rules relating to freight not acceptable for transportation or freight unacceptable

only under certain conditions as outlined below.

12. Unless otherwise expressly provided in TCI's tariffs and subject to any conditions or restrictions contained therein, the following articles will not be accepted for carriage: any shipment prohibited by law; original works of art; antiques, bonds, coins of any kind, currency, currency equivalents, furs, fur clothing, gems or stones (cut or uncut), industrial diamonds, gold or silver, coined concentrates, jewelry (other than costume jewelry), pearls, precious metals, securities (negotiable), time sensitive written material (e.g., bids, contract proposals, etc). when the declared value exceeds $0.50 per pound; household goods and/or personal effects, one-of-a-kind articles or models, prototypes, valuable maps (i.e., Oriental rugs, Persian rugs) and prints or lithographs when the declared value exceeds $0.50 per pound, per piece; and such other articles provided in TCI's governing tariffs and service guide. TCI shall not be liable for any loss, damage, delay, liabilities or penalties resulting from the transportation of any of the foregoing articles, however described or misdescribed in this air bill, and no employee or agent of TCI has any authority to accept for transportation such articles or to waive the limitations herein contained.

13. TCI liability for aggregate losses at any one time at any one place is limited to $50,000.00. For shipments having declared values over $50,000.00 TCI must be given advance notice prior to pick up.

14. Rates and charges for this shipment will be based on actual or dimensional weight, whichever is greater.

15. If this is an international shipment, a) all rules relating to liability as established by the Warsaw Convention shall apply. b) except as otherwise provided in TCI's tariffs or conditions of carriage, in carriage to which the Warsaw Convention does not apply, TCI's liability shall not exceed U.S. $20.00 per kilogram or the equivalent of goods lost, damaged or delayed, unless a higher value is declared by the shipper and a supplementary charge paid, c) TCI accepts this air bill as a Shipper's letter of instruction with authorization to prepare and sign on Shipper's behalf an international air waybill and d) TCI reserves the option to act as agent of the carrier, instead of as a forwarder, in which event the direct carrier's tariffs shall apply to this shipment and d) the shipper may select by inserting on the face of this air bill cargo coverage based on insurance and/or declared value for carriage.

16. Unless inserted otherwise on the face of this air bill, the C.O.D. amount of a shipment shall be deemed to be the declared value for carriage amount. This declared value for carriage amount in excess of $0.50 per pound, per piece, shall be subject to an excess valuation charge.

17. Collect on Delivery (C.O.D.) service is provided under the following conditions: a) Shipper must identify the shipment as a C.O.D. shipment by entering the amount to be collected in the "Shipper's C.O.D. Box" on the front of this shipping document, b) Shipper must specify the type of payment to be received (e.g. cash, check, money order or cashier's check) in the "Special Services Box" on the front of this air bill and c) TCI and Shipper agree that TCI does not guarantee nor verify that a check, money order, cashier's check or other such financial instrument is valid or negotiable. All payments are collected at shipper's risk.

18. Unless prior arrangements are made, the acceptance of cash by TCI and its agents for payment of freight charges and/or C.O.D. amounts is limited to a maximum of $2,000.00 per shipment and/or stop. Payment of freight charges and/or C.O.D. amounts in excess of $2,000.00 must be remitted by cashier's check, certified check, money order, or consignee's check as authorized by the shipper in writing.

19. TCI shall have the right to a) substitute alternate carriers or other means of transportation and b) select the routing or deviate from that shown on the face hereof.

20. This shipment is subject to inspection by TCI; however, TCI is not obligated to perform such inspection.

21. The Shipper and the Consignee shall be liable jointly and severally for all unpaid charges payable on account of this shipment pursuant to this contract and to pay or indemnify TCI for all charges, fines, penalties, damages, costs (storage, handling, reconsignment, return of freight to Shipper, etc.) or other sums which may be incurred by TCI by reason of any violation of this contract or any other default of the Shipper or Consignee or their agents. TCI shall have a lien on any goods shipped for failure to pay for charges payable on account of this shipment pursuant to this contract. Should TCI bring legal action for the enforcement of this contract or collection of any sums due and payable under this contract, TCI shall be entitled to reasonable attorney fees and costs.

22. All invoices not paid in full within 21 days of invoice date will be subject to a 1 1/2% per month.

23. Shipper and Consignee shall hold TCI and its agents harmless for loss/damage/delay or any monetary losses which are a result of auxiliary services including but not limited to local cartage, crating, uncrating, packing, and unpacking which are requested by the Shipper or Consignee and arranged by TCI as a customer service unless such services are actually performed by TCI or its agents. Such limitation of liability shall extend to the selection by TCI of the providers of the auxiliary services. Auxiliary services are those which are performed prior or subsequent to transportation and which may be billed directly by the provider of the service or by TCI. Providers of auxiliary services are contractors for the Shipper or Consignee and are not agents for TCI. Local cartage is the movement of unpackaged/uncrated freight. NOTE: Under no circumstances will the liability of TCI for monetary loss which is a result of any auxiliary services performed by TCI or its agents be greater than the liability contained in this contract.

24. Should TCI successfully defend itself for any legal actions brought by any party with an interest in this shipment, TCI shall be entitled to reasonable attorney fees and costs. NOTE: In lieu of legal actions, any disputed claim not greater than $15,000.00 is to be settled through binding arbitration submitted to the Transportation Arbitration Board or the American Arbitration Association under its cargo claim arbitration program. An alternative arbitrator is to be selected by TCI if the claim is unacceptable for the arbitration by both the above arbitrators.

25. Shipments are subject to security controls by carriers and, where appropriate, by government agencies. Copies of shipping documents will be retained until the shipment is delivered.

## CONDITIONS OF CONTRACT

26. Insurance coverage is based on TCI's open insurance policy in effect on the date of the shipment. Failure to properly complete the INSURANCE OPTION on the face of this air bill shall void the coverage this option affords. Failure to insert at least the full invoice value of the shipment shall reduce any insurance payment proportionately by the applicable percentage that the shipment was so under-insured. There are exceptions and/or special insuring conditions to the insurance option. Contact TCI for details.

   *INDIRECT AIR CARRIER STANDARD SECURITY PROGRAM*
   "Cargo items tendered for air transportation are subject to aviation security controls by air carriers and when appropriate, other government regulations. Copies of all relevant shipping documents showing the cargo's consignee, description, and other relevant data will be retained on file until the cargo completes its air transportation."

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF ORANGE**

**ALTERNATIVE DISPUTE RESOLUTION (ADR)**
**INFORMATION PACKAGE**

**NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):**

**Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.**

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its Web site as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE

## ADR Information

**Introduction.**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

**BENEFITS OF ADR.**

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

**Save Time.**  A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

**Save Money.**  When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

**Increase Control Over the Process and the Outcome.**  In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

**Preserve Relationships.**  ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction.**  In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

**Improve Attorney-Client Relationships.**  Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

**DISADVANTAGES OF ADR.**

ADR may not be suitable for every dispute.

**Loss of protections.**  If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

**Less discovery.**  There generally is less opportunity to find out about the other side's case with ADR than with litigation.  ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

**Additional costs.**  The neutral may charge a fee for his or her services.  If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

**Effect of delays if the dispute is not resolved.**  Lawsuits must be brought within specified periods of time, known as statues of limitation.  Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

## TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

**Arbitration.**  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Cases for Which Arbitration May Be Appropriate.**  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May <u>Not</u> Be Appropriate.**  If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Mediation.**  In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Cases for Which Mediation May Be Appropriate.**  Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May <u>Not</u> Be Appropriate.**  Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Neutral Evaluation.**  In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate.**  Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate.**  Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences.**  Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

**ADDITIONAL INFORMATION.**

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials.  Sometimes parties will try a combination of ADR types.  The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the telephone directories under "Arbitrators" or "Mediators"

Free mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA) For information regarding DRPA, contact:
- Community Service Programs, Inc. (949) 250-4058
- Orange County Human Relations (714) 834-7198

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE).  For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session.  For the ENE  program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session.  Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) programs is available on the Court's website at www.occourts.org.

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address):* | FOR COURT USE ONLY |
|---|---|

Telephone No.:              Fax No. (Optional):
E-Mail Address (Optional):
ATTORNEY FOR *(Name):*        Bar No:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
JUSTICE CENTER:
☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045
☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512
☐ Harbor-Laguna Hills Facility – 23141 Moulton Pkwy., Laguna Hills, CA 92653-1251
☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595
☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500
☐ West – 8141 13th Street, Westminster, CA 92683-0500

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: |
|---|---|

Plaintiff(s)/Petitioner(s),_____

_____

and defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
          ☐ Under section 1141.11 of the Code of Civil Procedure
          ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an *Order on Court Fee Waiver* (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals.  We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court rule 3.720 et seq.

Date: _____     _____     _____
                    (SIGNATURE OF PLAINTIFF OR ATTORNEY)     (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date: _____     _____     _____
                    (SIGNATURE OF DEFENDANT OR ATTORNEY)     (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**

**EXHIBIT "C"**

1  **ROBERTS & KEHAGIARAS LLP**
   CAMERON W. ROBERTS (State Bar No. 176682)
2  cwr@tradeandcargo.com
   THEODORE H. ADKINSON, ESQ. (State Bar No. 167350)
3  tha@tradeandcargo.com
   One World Trade Center, Suite 2350
4  Long Beach, CA 90802
   Telephone: (310) 642-9800
5  Facsimile: (310) 868-2923

6  Attorneys for defendant
   TRUMP CARD, INC.

7

8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                         COUNTY OF ORANGE

10
   C3 LIGHTING SOLUTIONS, INC., a  ) **CASE NO. 30-2014-00727687-CU-**
11 Nevada corporation               ) **BT-CJC**
                                    )
12            Plaintiff,            ) **NOTICE OF REMOVAL TO FEDERAL**
                                    ) **COURT**
13     vs.                          )
                                    ) Filing Date: June 11, 2014
14                                  )
   TRUMP CARD, INC., a California   )
15 corporation and DOES 1-30,       )
                                    )
16                                  )
            Defendants.             )
17 ─────────────────────────────────)

18      **TO THE HONORABLE COURT AND ALL COUNSEL OF RECORD:**

19      PLEASE  TAKE  NOTICE  THAT  defendant  Trump  Card  Inc.  has

20 filed a notice of removal of this action in the United States

21 District Court for the Central District of California.

22      Attached  hereto  as  Exhibit  "A"  is  a  copy  of  the

23 aforementioned notice of removal as served and filed.

24 Dated: July 16, 2014           **ROBERTS & KEHAGIARAS LLP**

25

26

27                         By: _____
                               Theodore H. Adkinson
28                             Attorneys for defendant
                               TRUMP CARD, INC.

                                   1

Z:\Trump Card\C3 Lighting Solutions\Notice of Removal to
Federal Court.doc                        NOTICE OF REMOVAL TO FEDERAL COURT